UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00161-TBR

BARBARA JONES                                                                                         Appellant,

v.

DEBORAH B. SIMON, Trustee,
JAMES W. OWENS, and LYNN W. OWENS                                            Appellees.


## MEMORANDUM OPINION

This matter is before the Court upon Barbara Jones's appeal of the August 7, 2013 order issued by the United States Bankruptcy Court for the Western District of Kentucky ("the Bankruptcy Court"), which granted Trustee Deborah Simon's Motion to Approve Settlement and denied Jones's objection to the same motion. Jurisdiction lies with this Court pursuant to 28 U.S.C. § 158(a)(1). Fully briefed, the matter is now ripe for decision. For the reasons that follow, the Bankruptcy Court's Order will be AFFIRMED.

### Factual Background

On October 22, 2009, James W. Owens, the debtor in this case, signed a Settlement Agreement resolving a legal malpractice claim filed by Barbara Jones. (Docket No. 4-1.) The Settlement Agreement allowed for several contingencies dependent on the events of certain litigation (the "Smith litigation") prosecuted by Owens. The Settlement Agreement contemplated in part that Owens would remit $30,000.00 to Jones within one year, unless the Smith litigation was "successfully mediated or settled" sooner. In the event of such resolution, Owens would have six months from the date of the mediation or settlement to pay Ms. Jones. Furthermore, Owens agreed to pay Jones the agreed upon $30,000 within sixty days of his receipt of attorney fees for the Smith litigation prior to the entry of a settlement order.

1

Although the Smith litigation was settled in April 2010, Owens issued no voluntary payment to Jones. On December 3, 2010, the McCracken Circuit Court entered a judgment of $30,000, plus fees and interest, in favor of Jones and against Owens. (Docket No. 4-3.) At a subsequent Citation to Discover Assets in the Circuit Court of McCracken County, case No. 04-CI-19, Owens testified that a portion of the fees he collected as a result of the Smith litigation were given to his son, Jason Owens. He further testified that he remitted no money to Jones.

On March 28, 2011, Owens, along with Lynn W. Owens, filed a joint Chapter 13 bankruptcy case. On April 12, 2011, the case was converted to a Chapter 7 bankruptcy, and Deborah Simon ("the Trustee") was appointed as Trustee. During the Chapter 7 case's administration, Jones' attorneys informed the Trustee that Owens had received attorney fees upon settlement of the Smith litigation and that he had paid at least $30,000.00 to his son soon thereafter as repayment for antecedent debts. The Trustee filed an adversary proceeding to recover such funds.

On November 10, 2011, a Notice of Assets & Request for Notice to Creditors to file proofs of claims was filed. February 13, 2012 was established as the deadline for filing such claims. On July 18, 2011, Jones filed a proof of claim reflecting a balance of $35,908.00 owed to her by Owens in the underlying bankruptcy matter. (Docket No. 4-5.) This figure reflects the $30,000.00 judgment, plus six percent interest and attorney fees. Jones asserts that no party has objected to this proof of claim. (Docket No. 4 at 9.)

On December 19, 2011, an order discharging the debtors' liabilities was entered in the underlying bankruptcy proceeding. The Trustee filed an adversary complaint against Jason Owens on March 1, 2012, alleging that he received a preferential transfer of money from Owens during the year preceding the filing of Owens's bankruptcy case and seeking recovery of the funds. After discovery, the Trustee reached a settlement agreement with Jason Owens, with Jason agreeing to remit $5,000.00 to the Trustee

in order to settle the claims. Jones subsequently filed an Amended Proof of Claim in the amount of $35,908.00 and asserted a secured claim for $5,000.00. The Bankruptcy Court entered an Order approving the Settlement on April 16, 2013. Jones now claims that she has a security interest in the funds recovered from Jason Owens, pointing to both the Settlement Agreement and the judicial lien created by entry of the consent judgment.

**Standard of Review**

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). A district court is bound by the "clearly erroneous" standard of review of the bankruptcy judge's factual determinations, giving due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. Fed. R. Bankr. 8013. A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A bankruptcy court's findings of fact should not be disturbed without "most cogent evidence of mistake or miscarriage of justice." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

A district court reviews *de novo* a bankruptcy court's conclusions of law. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 529, 631 (6th Cir. 1994). When state law provides the rule of decision, a federal court must apply the "law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). If the state's highest court has not addressed the matter, then the federal court must determine the state law based on "all relevant data." *Id.*

**Analysis**

Jones urges the Court to reverse the Bankruptcy Court's holding that she was not a secured creditor in the proceeds of the Settlement Agreement reached by the Trustee and Jason Owens. The Court cannot agree, as Jones lacks an enforceable security interest in such funds.

3

Here, the Stipulation of Facts and the Settlement Agreement of Owens and Jones memorialize Owens's agreement to pay $30,000 to Jones within one year from the date of the order dismissing her complaint against him in McCracken Circuit Court. The Settlement Agreement also compelled Owens to pay Jones the $30,000 in various circumstances related to the class action suit. The transaction as a whole, Jones says, indicates the parties' intent to secure payment of the $30,000 with any funds that Owens might receive from the class action lawsuit. Jones argues that the Bankruptcy Court erroneously applied Kentucky law, under which she possesses a security interest in the funds recovered by the trustee.

The Court agrees that Kentucky law governs this matter. As the United States Supreme Court has explained, "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) (internal quotations omitted). The word "claim" in the Bankruptcy Code generally refers to a right to payment under state law. Accordingly, a court determines the claim's validity by reference to state law. *Id.*

Kentucky law provides that the existence of a security interest hinges upon the parties' intent. A security agreement need not include "magic words" to create a valid security interest. *In re Owensboro Canning Co., Inc.*, 82 B.R. 450, 455 (W.D. Ky. 1988). Instead, the instrument's language must simply yield the "logical conclusion that it was the intention of the parties that a security interest be created." *Id.* (quoting *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bankr. S.D. Tex. 1985) (citations omitted)). The parties' intention may be inferred from the totality of the transaction in order to determine if a signed writing describes the collateral, demonstrating an intent to create a security interest. *Id.*

Jones relies on *In re Owensboro Canning Co., Inc.*, 82 B.R. 450 (W.D. Ky. 1988), in support of her argument. *Owensboro Canning* explained that to determine whether a security agreement has been established, the court must initiate two independent inquiries:

4

> The *court* must resolve, *as a question of law*, whether the language embodied in the writing objectively indicates that the parties may have intended to create or provide for a security agreement. If the language crosses this objective threshold, that is, if the *writing* evidences a possible secured transaction and thus satisfies the statute of frauds requirement, then the *factfinder* must inquire whether the parties actually intended to create a security interest. Parol evidence is admissible to inform the latter, but not the former, inquiry.

*Id.* at 453-54 (quoting J. White & R. Summers, *Uniform Commercial Code*, § 23-3 at 905 (2d ed. 1980) (citations omitted) (emphasis added)). Bearing this standard in mind, *Owensboro Canning* held that the parties' letter agreement was sufficient to amount to a written security agreement. The court rejected the argument that because the doucument was labeled a "letter of intent" and stated that the parties "conceptually 'agree[d]'" to its provisions, the debtor lacked the intent to give a security interest. *Id.* at 454, 455 n.4. Instead, once the debtor's principal executed the letter of intent, thereby indicating his acceptance, the security interest "became operative." *Id.* at 455, n.4. In addition, the court looked to a financing statement, which named as collateral "all accounts receivable, inventory and raw materials" and was recorded on the date of the letter agreement's execution. *Id.* at 451.

The instant facts, however, do not compel the same conclusion. As the Bankruptcy Court noted, the Settlement Agreement established only the timing of Owens's obligation, addressing *when* the payment would come due. It did not, however, discuss the particular manner or source of funds in question, nor did it indicate whether any property would stand as security for the obligation. (*See* Docket No. 1 at 81, Bankruptcy Opinion, Document 96.) No language suggests that Owens granted a lien or security interest on the attorney fees, settlement proceeds, or other property. The writings at issue, therefore, provide no evidence that the parties intended to create a security interest. *Cf. Matter of Bollinger Corp.*, 614 F.2d 924 (3d Cir. 1980) (reading together a promissory note, recorded financing statement, and the parties' correspondence to find a security agreement).

Moreover, even had the Settlement Agreement created a security interest in the funds at issue, Jones filed no financing statement, nor did she take other action to perfect the purported security interest.

5

The Trustee, therefore, enjoyed a superior interest to any unperfected interest claimed by Jones. Lacking a perfected security interest, Jones cannot reach the proceeds recovered by the Trustee. *See* 11 U.S.C. § 544 (affording the trustee with the rights and powers of a creditor who has obtained a judicial lien on all property of the debtor).

In the alternative, Jones argues that after Owens transferred the funds at issue to his son, she asserted a secured claim by filing a proof of claim, to which no party has properly objected. (Docket No. 4 at 5.) A proof of claim is a written statement setting forth a creditor's claim, supported by writings that indicate the claim's basis. Fed. R. Bankr. P. 3001(a); *Collier on Bankruptcy*, § 3001.3 (1988). The purpose of the proof of claim is to alert the court, trustee, other creditors, and the debtor himself to the claims against the estate. *In re Arnold Stern*, 70 B.R. 472 (Bankr. E.D. Pa. 1987). A proof of claim executed and filed in accordance with the bankruptcy rules constitutes *prima facie* evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f). Absent proper objection, a *prima facie* claim is deemed allowed. 11 U.S.C. § 502(a). The trustee has a duty to review all proofs of claim to determine if a reasonable basis exists to move to disallow a particular claim. *See* 11 U.S.C. § 704(a)(5) (requiring the trustee to, "if a purpose would be served, examine proof of claims and object o the allowance of any claim that is improper.").

Jones indeed timely filed an initial proof of claim for the amount of $35,908.00 on July 18, 2011. She then filed an amended proof of claim in the same amount on February 18, 2013, and asserted a secured claim for $5,000. Jones argues that no objection has been field to either the original proof of claim or to the subsequent amendment. Thereby, Jones reasons, the amended proof of claim constitutes prima facie evidence of the validity and amount of her claim.

The Trustee states that she has reviewed Jones's amended proof of claim and has concluded that it provides insufficient evidence of a perfected security interest; she will, therefore, object to the claim. *See In re Woods*, 139 B.R. 876, 877 (Bankr. E.D. Tenn. 1992) ("The responsibility for examining and

objecting to claims rests with the trustee."). The Bankruptcy Court agrees that despite Jones's filing of the two proofs of claim, she nonetheless has only an unsecured claim, secured by no collateral. This Court cannot find that the Bankruptcy Court erred, particularly in light of the conclusion that the parties displayed no intent to create a secured claim, as discussed above. Jones remains, therefore, an unsecured creditor.

## CONCLUSION

For the reasons explained above, the order of the Bankruptcy Court granting the Chapter 7 Trustee's Motion to Approve Settlement will be affirmed. A separate order will be entered this date in accordance with this opinion.